Jeffrey D. Boyd
Nelson Boyd, PLLC
601 Union Street, Suite 2600
Seattle, WA 98101
Tel. 206.971.7601
Email:  boyd@nelsonboydlaw.com

Roger D. Wiegley
Law Offices of Roger D. Wiegley
633 Central Road, Box 432
Rye Beach, NH 03871
Tel. 917.517.6137
Email:  rwiegley@wiegleylaw.com
Subject to Admission *Pro Hac Vice*

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AARON GRUETER; MARK POREMAN; ALLAN LIGI; KENNETH CASCARELLA; ANDREW POKLADOWSKI; INWOOD CAPITAL PARTNERS LLC; SANDRA MCALLISTER; THOMAS DOBRON; LESLIE SCHULTZ; MICHAEL PESICK and THOMAS BENNETT;<br><br>                    Plaintiffs,<br><br>         vs.<br><br>WITHERSPOON BRAJCICH MCPHEE PLLC; and PETER EDWIN MOYE<br><br>                    Defendants | Case No.:<br><br>COMPLAINT FOR DAMAGES |

COMPLAINT FOR DAMAGES

## NATURE OF ACTION

1.      This is an action for legal malpractice, breach of fiduciary duty, negligence, and breach of oral contract.

2.      Plaintiffs seek damages in the aggregate amount of $1,000,000 plus costs.

3.      Defendant Witherspoon Brajcich Mcphee PLLC, a law firm ("Defendant WBM"), was entrusted with funds by the Plaintiffs in the aggregate amount of $1,000,000.

4.      Defendant Peter Edwin Moye ("Defendant Moye"), a member of Defendant WBM, was at all relevant times acting as the principal agent and member of Defendant WBM.

5.      The funds that were entrusted to Defendant WBM by the Plaintiffs were sent by Defendant Moye to a bank account that was not under appropriate control and, as a result, the funds are now missing and all attempts to recover the funds have been unsuccessful.

6.      If Defendant WBM had not mishandled the $1,000,000 entrusted to them by the Plaintiffs, the funds would have been returned to the Plaintiffs.

7.      None of the funds entrusted to the Defendant WBM by the Plaintiffs have been returned to the Plaintiffs.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 49 U.S. Code §1332 because the amount in controversy is greater than $75,000 and all the Plaintiffs have different citizenship than all the Defendants.

9.      Venue is proper because the principal office of Defendant WBM is within the jurisdiction of this Court and several acts and omissions giving rise to the claims in this action occurred in such jurisdiction.

COMPLAINT FOR DAMAGES

## THE PARTIES

**A.**     **The Individually Named Plaintiffs**

10.     Aaron Grueter is a natural person more than 18 years of age who resides in the State of New Hampshire.

11.     Mark Poreman is a natural person more than 18 years of age who resides in the State of Connecticut.

12.     Allan Ligi is a natural person more than 18 years of age who resides in the State of California.

13.     Kenneth Cascarella is a natural person more than 18 years of age who resides in the State of Tennessee.

14.     Andrew Pokladowski is a natural person more than 18 years of age who resides in the State of Connecticut.

15.     Inwood Capital Partners LLC is a limited liability company formed and existing under the laws of the State of Connecticut and has no place of business in the State of Washington.

16.     Sandra McAllister is a natural person more than 18 years of age who resides in the State of New Jersey.

17.     Thomas Dobron is a natural person more than 18 years of age who resides in the State of California.

18.     Leslie Schultz is a natural person more than 18 years of age who resides in the State of California.

19.     Michael Pesick is a natural person more than 18 years of age who resides in the State of Connecticut.

20.     Thomas Bennett is a natural person more than 18 years of age who resides in the

COMPLAINT FOR DAMAGES

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

State of South Carolina

**B.     The Defendants**

21.     Upon information and belief, Defendant WBM is a professional limited liability company formed under the laws of the State of Washington whose members and are licensed to practice law in the State of Washington.

22.     Defendant WBM's principal office is located at 601 West Main Avenue, Suite 1400 Spokane, Washington 99201-0677.

23.     Upon information and belief, Defendant Moye is a member (also referred to as a "partner") of Defendant WBM and is licensed to practice law in the State of Washington.

24.     Upon information and belief, Defendant More is a resident of the State of Washington.

## <u>BACKGROUND</u>

25.     H-Source Distribution-U.S., Inc. ("H-Source") is an e-commerce health care distribution corporation and the US subsidiary of H-Source, Inc. a Canadian corporation.  H-Source is in the business of brokering the sale of medical equipment and supplies in the U.S and around the world.

26.     H-Source is, and at all times relevant to this Compliant was, a client of Defendant WBM, and Defendant WBM had an attorney-client relationship with H-Source for the matters described in this Complaint.

27.     On or about August 13, 2021 H-Source entered into an agreement with CCG Trading, Inc., a Wyoming corporation ("CCG Trading") for the sale by CCG Trading to H-Source of six million boxes of Cranberry Evolve 300 nitrile powder free examination gloves manufactured by Cranberry International SDN BHD ("<u>First Supply Agreement</u>").

COMPLAINT FOR DAMAGES

28.     At some time during the period of mid-August to mid-October, H-Source and CCG Trading decided to amend or replace the First Supply Agreement with a revised supply agreement that would require H-Source to deposit $1,000,000 in an escrow account as security for its payment obligations under the new supply agreement.

29.     H-Source then identified eleven investors, the Plaintiffs, who were willing to place $1,000,000 collectively in escrow on behalf of H-Source in exchange for a share of profits from the sale of examination groves to be purchased by H-Source under the new supply agreement.

30.     On or about October 15, 2021, Defendant Moye participated in a Zoom conference call with John Kupice (then CEO of H-Source), Steven Neff (from H-Source), Adam Shaw (from H-Source) and three of the Plaintiffs:  Andy Pokladowski, Mark Poreman and David Harrison.  One purpose of the call was to explain to proposed escrow arrangement under the proposed new supply agreement.

31.     On or about October 19, 2021, H-Source entered into an agreement with CCG Trading entitled "Addendum Agreement #1", which provided that (i) the First Supply Agreement was cancelled, (ii) H-Source and CCG Trading, by entering into Addendum Agreement #1, were also entering into a revised supply agreement (the "Second Supply Agreement") and an escrow agreement ("Escrow Agreement"), both attached to Addendum Agreement #1, (iii) the parties must complete a trial order sale and purchase as a condition precedent to the Second Supply Agreement ("Trial Order") and (iv) H-Source was required to pledge $1,000,000 as "Contract Security" (the term used in the agreement) with a deposit into an escrow account pursuant to the Escrow Agreement.  The Escrow Agreement is attached hereto as **EXHIBIT 1**.

32.  Addendum Agreement #1 stated "For the purpose of the Trial Order, the legal representative for the Buyer [H-source], Mr. Peter Moye shall be added as an Authorized

COMPLAINT FOR DAMAGES

Signatory of the Escrow Agreement and Mr. Moye's signed authority is required for the release of the Contract Security".

33.     Upon information and belief, the Escrow Agreement was entered into on or about October 19, 2021.

34.     The parties to the Escrow Agreement were H-Source, CCG Trading, Nouam Financial Consultants Pvt Ltd, an India corporation ("Nouam"), and Emerio Banque Ltd, as escrow agent ("Emerio Banque"), or by unknown parties fraudulently representing themselves to be acting on behalf of Nouam and/or Emerio Banque.

35.     The Escrow Agreement is unusual is three respects:

   a.  It does not provide the account information to which the escrowed funds are to be sent or state that the escrow agent will provide the bank account information.  It merely says in Section I.1, "The Buyer, after execution of this Escrow Agreement shall deliver to the Escrow Agent the amounts necessary for the purchase of the products under the Supply Agreement. . ."

   b.  The Escrow Agreement imposes virtually no obligations on the escrow agent.  In fact, Section II.1 provides that:  "Notwithstanding any provision to the contrary, the Escrow Agent is obligated only to perform the duties specifically set forth in this Escrow Agreement, which shall be deemed purely ministerial in nature. Under no circumstances will the Escrow Agent be deemed to be a fiduciary to any Party or any other person under this Escrow Agreement."  This language is inexplicable because an escrow agent is the very definition of a party with fiduciary duties.

   c.   Nouam is expressly made a party and signatory to the Escrow Agreement but has no obligations under the agreement and its only right is to co-sign payment instructions to

COMPLAINT FOR DAMAGES

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

the escrow agent.  The signature page of the Escrow Agreement identifies Nouam as "Financier".

36.    Upon information and belief, Emerio Banque never conducted the standard account opening procedures in connection with the escrow account, such as anti-money laundering (AML) due diligence, know-your-customer procedures (KYC) and sanctions compliance.

37.    Upon information and belief, Defendant Moye, as counsel to H-Source, reviewed the First Supply Agreement; Addendum Agreement #1; the Second Supply Agreement; and the Escrow Agreement before they were signed.

38.    Pursuant to Addendum Agreement #1, in the event that the purchase of the Trial Order was not completed, the escrowed funds were to be returned to H-Source.

39.    To raise the $1,000,000 to be placed in escrow, H-Source entered in an agreement with the Plaintiffs entitled "Investors Agreement", effective October 21, 2021 ("Investors Agreement"), pursuant to which the Plaintiffs agreed to deposit $1,000,000 in escrow in accordance with the Escrow Agreement on or before October 27, 2021.

40.    Each Plaintiff agreed to place in escrow the following amount pursuant to the Investors Agreement:  Aaron Grueter -- $125,000; Mark Poreman --$100,000; Allan Ligi --$100,000; Kenneth Cascarella --$100,000; Andy Pokladowski --$100,000; Inwood Capital Partners LLC -- $100,000; Sandra McAllister --$100,000; Thomas Dobron --$100,000; Leslie Schultz -- $100,000; Mike Pesick --$50,000; and Thomas Bennett --$25,000.

41.    Upon information and belief, Defendant Moye, as counsel to H-Source, drafted the Investors Agreement.

42.    The Investors Agreement was signed on or about October 21, 2021.

43.    On or about October 26, 2021, CCG Trading sent a document to H-Source entitled

COMPLAINT FOR DAMAGES

"Wire & Deposit Instructions" (inexplicably dated October 19, 2021) directing H-Source to send $1,000,000 to an account at Chase Bank in New York with the account name "Atari Interactive Inc." (account number 530974657).  (**EXHIBIT 2**)

44.    Upon information and belief, Defendant Moye received a copy of EXHIBIT 2 on or about October 26, 2021.

45.    On or about October 27, 2021, the Plaintiffs collectively wired $1,000,000 to an account at JP Morgan Chase Bank in New York per wire instructions provided by CCG Trading to H-Source, referred to in allegation #43.

46.    On or about October 27, 2021, Glen Jackson at CCG Trading forwarded to Defendant Moye an email message from Emerio Banque to Nouam. This email from Emerio Banques states that Atari Interactive Inc. is a NASDAQ listed company, etc.; that remittances from the individuals who were asked to send funds should be cancelled; and that the funds to be placed in escrow should be sent by CCG Trading or H-Source. (**EXHIBIT 3**)

47.    On or about October 28, 2021, Defendant Moye sent an email to Emerio Banque with an attachment entitled "RE: CORRECTION & REVERSAL OF TRANSFERS; ATARI INTERACTIVE ACCOUNT # 530 974657", in which Defendant Moye wrote: "The following transfers were sent erroneously to the account referenced above ("ATARI")." And "We have instructed the senders to cancel all pending transfers, if any. For all funds that may have posted to the ATARI account already, please return them to the sender." (**EXHIBIT 4**)

48.    The amount of $1,000,000 was in fact returned to the Plaintiffs after they sent the said amount to account number 530974657 at Chase Bank in New York.

49.    Upon information and belief, Defendant Moye then proposed to H-Source that the investors (i.e., the Plaintiffs) send the $1,000,000 to the client trust account maintained by

COMPLAINT FOR DAMAGES

Defendant WBM for forwarding to the escrow account, thereby meeting the requirements set for in the email from Emerio Banque referring to in allegation #46.

50.    In early or mid-November, CCG Trading sent to H-Source a second document entitled "Wire & Deposit Instructions" (inexplicably dated October 19, 2021, as was the first) directing H-Source to send $1,000,000 to an account at Chase Bank in New York with the account name "AtariAlphaVerseCBI" (account number 758908854).   (**EXHIBIT 5**)

51.    The Plaintiffs were instructed by H-Source to send $1,000,000 collectively to the client trust account maintained by Defendant WBM. The Plaintiffs were not given information about the account at Chase Bank in New York referred to in EXHIBIT 5.

52.    In early or mid-November, the Plaintiffs did send $1,000,000 collectively to the client trust account maintained by Defendant WBM.

53.    On November 18, 2021, Defendant WBM sent $500,000 from the firm's client trust account to the account at Chase Bank in New York with the account name "AtariAlphaVerseCBI" (account number 758908854).

54.    On November 24, 2021, Defendant WBM sent an additional $500,000 from the firm's client trust account to the account at Chase Bank in New York with the account name "AtariAlphaVerseCBI" (account number 758908854).

55.    The Trial Order under the Second Supply Agreement was not completed, which meant that H-Source was entitled to a return of the escrowed funds of $1,000,000.

56.     The $1,000,000 held in escrow was not returned to the H-Source or the Plaintiffs or the Defendants.

57.     Defendants sought to recover the escrowed funds belonging to Plaintiffs but they were not successful in doing so.

COMPLAINT FOR DAMAGES

58.    To date, the Plaintiffs have not received the $1,000,000 that they sent to the trust account of Defendant WBM and which is owed to them.

## FIRST CAUSE OF ACTION

### (Negligence)

59.    Plaintiffs repeat each allegation numbered 1 through 58 above and incorporate by reference each such preceding allegation as set forth herein.

60.    In the conference call among Defendant Moye and three of the Plaintiffs, among others, held via Zoom on October 15, 2021, referred to above in allegation #30, Defendant Moye stated that the Plaintiffs' funds would be safe in the escrow account and that the funds could not be moved from the escrow account without Defendant Moye's signature.  During the call, Defendant Moye said, "the million dollars is not at risk. There will be no deduction from that account especially without my signature" and later in the call Defendant Moye stated, "That million dollars is not at risk. Adam [Shaw of H-Source] and I have spent 3 days trying to poke holes in this."  This information was passed to the other Plaintiffs by the Plaintiffs that were on the call.  The Plaintiffs relied on Defendant Moye's representation that the funds could not leave the escrow account without his approval.

61.    By accepting the Plaintiffs' money into the firm's trust account, Defendant BDM assumed a duty to the Plaintiffs; specifically, a duty of care in handling the Plaintiffs' funds. The plaintiffs sent their funds to the trust account of Defendant WBM with the understanding that the $1,000,000 would be would be sent to an escrow account governed by the Escrow Agreement, and based on oral representations from Defendant Moye, the Plaintiffs believed that their funds would be not be at risk.

62.    Defendants had a conflict of interest in handling Plaintiffs' funds, i.e., Defendants owed

COMPLAINT FOR DAMAGES

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

a duty to H-Source, WBM's client, to follow their client's instructions, while at the same time Defendants owed a duty of care to the Plaintiffs in the handling of the Plaintiffs' funds.

63.     Defendants breached their duty of care to the Plaintiffs by negligently failing to exercise due diligence and investigating questionable facts known to Defendant Moye, which, if investigated, would have caused the Defendant Moye to refrain from sending Plaintiff's funds to a bank account over which Defendant Moye had no control.

64.     Neither Defendant Moye nor anyone else acting on behalf of Defendant WBM conducted a proper due diligence investigation with respect to the transfer of the Plaintiffs' funds.

65.     Neither Defendant Moye nor anyone else acting on behalf of Defendant WBM sought an answer to the following question with respect to the first attempted transfer of funds, in which Defendant WBM was not involved but of which it was aware:   Why were the funds sent to an escrow account in the name of "Atari Interactive Inc." when Atari Interactive, Inc. was not mentioned in the Transaction Documents, including the Escrow Agreement, and had no apparent role in the escrow arrangement?

66.     Neither Defendant Moye nor anyone else acting on behalf of Defendant WBM sought an answer the following question:  Why wasn't the escrow account at or in the name of the escrow agent, Emerio Banque, Ltd?  The website for Emerio Banque (www.emeriobanque.com) states that Emerio Banque can open U.S. dollar accounts.

67.     Neither Defendant Moye nor anyone else acting on behalf of Defendant WBM questioned the fact that the Escrow Agreement absolved the escrow agent, Emerio Banque, from any fiduciary duty with the following language:  "Under no circumstances will the Escrow Agent be deemed to be a fiduciary to any Party or any other person under this Escrow Agreement."

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

68.    The Escrow Agreement states that the escrow agent's fee will be "$NIL".  (EXHIBIT 1, Exhibit B thereto),

69.     Upon information and belief, Defendant Moye, who reviewed the Escrow Agreement before it was signed, did not ask why Emerio Banque agreed to be the escrow agent for no fee.

70.    As stated in allegation #46, on or about October 27, 2021, Glen Jackson at CCG Trading forwarded to Defendant Moye an email message from Emerio Banque to Nouam (EXHIBIT 3), and this information was forwarded to Defendant Moye.  Neither Defendant Moye nor anyone else acting on behalf of Defendant WBM sought an answer the following question:  Why did the escrow agent address this email to Nouam, who had no responsibility for placing funds in escrow?

71.    The email from Emerio Banque to Nouam referred to in the previous allegation, which was forwarded to Defendant Moye, states that Atari Interactive, Inc. is a NASDAQ listed company.  In fact, Atari Interactive, Inc. is not and never was a NASDAQ listed company, a fact which Defendant Moye could have easily checked.  Neither Defendant Moye nor anyone else acting on behalf of Defendant WBM sought to confirm the statement that Atari Interactive was a NASDAQ listed company.  This is significant because Emerio Banque stated that the funds to be placed in escrow could only come from H-Source or CCG Trading due to the fact that Atari Interactive, Inc. was a NASDAQ listed company.

72.    The email from Emerio Banque to Nouam referred to in the previous allegation, which was forwarded to Defendant Moye, goes on to states that because Atari Interactive, Inc. is a NASDAQ listed company, it has regulatory and reporting requirements that made it necessary for the funds to be placed in escrow could only come from H-Source or CCG Trading.

COMPLAINT FOR DAMAGES

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

Defendant Moye did not challenge this explanation even though he, as an experienced corporate attorney, knew or should have known that this explanation was very questionable.

73.     The second "Wire & Deposit Instructions" sent by CCG Trading to H-Source (EXHIBIT 5), which was forwarded to Defendant Moyer before he sent Plaintiffs' funds out of his firm's trust account, directed H-Source to send $1,000,000 to an account at Chase Bank in New York with the account name "AtariAlphaVerseCBI" (account number 758908854).  Neither Defendant Moye nor anyone else acting on behalf of Defendant WBM sought an answer the following questions:  Who owns that account, given that the account name is so ambiguous?  Why is an account different from the first account being used, given that the email from the escrow agent, Emerio Banque, to Nouam, referred to in allegations ##68 to 70 (EXHIBIT 3) mentioned only requirement that the funds come from a different source, not that they should be sent to a different account?  Who designated the account as the escrow account, given that there is no document with the such designation by the escrow agent?

74.  If Defendant Moye or anyone acting on behalf of Defendant WBM has made appropriate inquiries concerning the ownership of the account at Chase Bank in New York with the account name "AtariAlphaVerseCBI" (account number 758908854), he or they would have learned that the account was owned by Crypto Blockchain Industries, SA, a French company that had nothing to do with the transaction.

75.  Neither Defendant Moye nor anyone else acting on behalf of Defendant WBM sought an answer from the escrow agent to the following question before sending funds to the account at Chase Bank in New York with the account name "AtariAlphaVerseCBI" (account number 758908854):  Was the escrow account under the control of the escrow agent and if so, how?  This question was relevant because the escrow agent's name did not appear on the account, the

COMPLAINT FOR DAMAGES

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

Escrow Agreement does not identity the account, and there is no correspondence or other documentation describing a connection between the escrow agent and the aforesaid account.

76.  In a letter dated April 26, 2022, from Defendant Moye to the attorney for Nouam and Emerio Banque--written after the Plaintiffs' funds were lost--Defendant Moye wrote: "In my conversations with the Atari general counsel, he informed me in no uncertain terms that Atari knew nothing about the transactions between CCG and Nouam and that upon noticing the wire transfers into the Atari account, it prompted them to contact Chase Bank and (i) begin a fraud investigation, and (2) reverse all the wire transfers."  (**EXHIBIT 6**) If Defendant Moye had contacted the Atari general counsel before releasing the Plaintiff's funds from his firm's trust account, he would have learned this critical information.

77.   If the Defendants, and particularly Defendant Moye since he was familiar with the transaction, had exercised proper due diligence and exercised the Defendants' duty of care by asking the questions and making the inquiries described in allegations ##65 to 76, Defendant Moye would have gained information that would have cause him to refrain from sending the Plaintiffs' funds of out of  Defendant WBM's trust account.

78.   By agreeing to hold $1,000,000 provided by the Plaintiffs, Defendants assumed a duty of care to the Plaintiffs, and such duty included the obligation to exercise due diligence when relevant facts and circumstances relating to instructions from other parties raised serious questions about the legitimacy of those instructions.

79.  Defendants' breach of their duty of due care was negligence, and Defendants negligence was the direct cause of Plaintiffs' loss of $1,000,000.

## SECOND CAUSE OF ACTION

### (Legal Malpractice)

COMPLAINT FOR DAMAGES

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

80.    Plaintiffs repeat each allegation numbered 1 through 79 above and incorporate by reference each such preceding allegation as set forth herein.

81.    Defendant Moye is an attorney licensed to practice law in the State of Washington and Defendant WBM is a professional firm that is authorized to provide legal services in the State of Washington.

82.    At all times relevant to the matters discussed herein, Defendant Moye acted as an attorney and as a member of Defendant WBM.

83.    The standard of care to which a Washington lawyer is held is that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in the State of Washington.

84.    The imposition of a professional duty on an attorney does not require an attorney-client relationship.

85.    Defendants assumed a professional duty to the Plaintiffs when they agreed to hold the Plaintiffs' funds and disburse those funds in accordance with the Transaction Documents.

86.    By accepting the Plaintiffs' funds, the Defendants were acting for the benefit of their client but Defendants actions, had they produced the intended result, would have benefitted the Plaintiffs in a manner known to Defendants, i.e., the Plaintiffs would have shared profits from the transaction with the Defendants' client.

87.    Attorneys with experience in business transactions, which Defendant WBM claims to have, understand the importance of due diligence investigations, particularly when questionable circumstances arise.

88.    Defendants breached their professional duty to Plaintiffs by negligently failing to make inquiries, as lawyers normally would, when they learned facts that can only be described as

COMPLAINT FOR DAMAGES

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

glaring, obvious irregularities in the proposed movement of funds that Defendant Moye incorrectly believed was required by the Escrow Agreement.

89.    The negligent failure of the Defendants to conduct an appropriate due diligence investigation, given so many obvious questions and "red flags", establishes that the Defendants did not exercise that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in the State of Washington.

90.    The Defendants' breach of their professional duty to Plaintiffs directly caused a loss to the Plaintiffs of $1,000,000 collectively.

91.    Unquestionably, persons other than the Defendants misappropriated the Plaintiffs' funds, but that does not alter Defendants' responsibility for Plaintiffs' loss.    The negligence of the Defendants need not be the sole cause of the injury complained of in order to entitle the Plaintiffs to damages.  If the Defendants had not breached their professional duty to Plaintiffs, Plaintiffs loss of $1,000,000 would not have occurred.

## THIRD CAUSE OF ACTION

### (Breach of Fiduciary Duty)

92.    Plaintiffs repeat each allegation numbered 1 through 91 above and incorporate by reference each such preceding allegation as set forth herein.

93.    A fiduciary relationship is defined in the Restatement (Second) of Torts § 874 (1979) as existing between two persons "when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  Such a relationship imposes on the fiduciary the duty to act in the best interest of the person who has placed his or her trust and confidence in the fiduciary. As a result, the fiduciary may not simply deal with

COMPLAINT FOR DAMAGES

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

that party at arm's length, guided only by the morals of the marketplace.

94.     By accepting Plaintiffs' money into Defendant WBM's trust account and giving assurances to the Plaintiffs that their money would be not be at risk after it was sent, Defendant Moye, and therefore Defendant WBM, became a trustee of Plaintiffs' funds and thereby assumed a fiduciary duty to the Plaintiffs.

95.     WA Rev Code §11.100.010 (2022) provides:   "Any corporation, association, or person handling or investing trust funds as a fiduciary shall be governed in the handling and investment of such funds as in this chapter specified. A fiduciary who invests and manages trust assets owes a duty to the beneficiaries of the trust to comply with requirements of this chapter."

96.     The duties of a trustee are described in WA Rev Code §11.100.020 (2022) (Management of trust assets by fiduciary), which provides in relevant part:

> "(1) A trustee shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution.
>
> . . . .
>
> (4) A trustee shall make a reasonable effort to verify facts relevant to the investment and management of trust assets.
>
> . . . .
>
> (6) A trustee who has special skills or expertise, or is named trustee in reliance upon the trustee's representation that the trustee has special skills or expertise, has a duty to use those special skills or expertise."

97.   WA Rev Code §11.98.014 (2022) clarifies that a trust can be oral.

COMPLAINT FOR DAMAGES

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

98.    Defendants did not act as a "prudent investor" would have.  Had the $1,000,000 belonged to Defendant WBM, Defendant Moye would not have sent the money to a bank account with such dubious legitimacy without first asking several obvious questions.

99.    Defendants breached their fiduciary duty to the Plaintiffs when they acted negligently by senting the Plaintiffs' money to a bank account that should have aroused Defendants' suspicions because there were so many "red flags".  Defendants were negligent because failed to ask obvious questions before releasing the Plaintiffs' money—a failure that is more inexplicable because Defendant WBM, as a law firm, and Defendant Moye, as a transactional attorney, have undoubtedly conducted many due diligence investigations for clients in connection with commercial transactions.

100.    Defendants' breach of their fiduciary duty to Plaintiffs was the direct cause of the loss of $1,000,000 by Plaintiffs.

## FOURTH CAUSE OF ACTION

### (Breach of Oral Contract)

101.    Plaintiffs repeat each allegation numbered 1 through 100 above and incorporate by reference each such preceding allegation as set forth herein.

101.    Black's Law Dictionary (11th ed. 2019) generally defines the escrow function as holding a legal document or property "delivered by a promisor … for a given amount of time or until the occurrence of a condition, at which time … [the holder] … is to hand over the document or property to the promisee." As Black's Law Dictionary also notes, the person or entity serving as the neutral holder is commonly referred to as "an escrow."

COMPLAINT FOR DAMAGES

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

103.    An escrow agreement, like any other contract, can be an oral contract or it can be in writing.

104.    There was an oral escrow agreement between the Plaintiffs and the Defendants. Specifically, the Plaintiffs agreed to (and did) deposit $1,000,000 in the trust account of Defendant WBM.   In turn, Defendant WBM, acting through Defendant Moye, agreed to forward the $1,000,000 to an escrow account that required Defendant Moye's signature before the money could be moved from the escrow account.  This element of control by Defendant Moye was relied upon by the Plaintiffs because Defendant Moye earlier made comments to some of the Plaintiffs during a conference call on October 15, 2021, in which he said, in reference to the escrow account, "I am the signatory on behalf of H-Source that is correct. and it doesn't get moved unless I say so." The Plaintiffs relied on this representation.

105.    The purpose of the oral escrow agreement entered into by the Defendants and the Plaintiffs was to ensure that the Plaintiffs' funds in the amount of $1,000,000 would be transferred to an account that would meet the requirements of the Escrow Agreement, i.e., an escrow account from which the funds could not be moved without the signature of Defendant Moye.

106.    Defendant Moye breached the oral escrow agreement with the Plaintiffs by sending money to a bank account over which he had no control.

107.    Defendant Moye's breach of the oral agreement with Plaintiffs was direct cause of a loss to Plaintiffs in the amount of $1,000,000.

COMPLAINT FOR DAMAGES

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment jointly and severally against the defendants, and each of them, as follows:

a.    for damages in an amount of $1,000,000.00;

b.    for costs and expenses incurred in this case;

c.    for pre-judgment and post-judgment interest at the applicable rates as provided by law; and

d.    for such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

Plaintiffs request a jury trial on any issue cognizable by a jury.

DATED this _____ day of August, 2023.

PLAINTIFFS,
By their attorneys,

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, WA 98101
Tel. 206.971.7601

By: _____
Jeffrey D. Boyd
boyd@nelsonboydlaw.com

Washington Bar No. 41620

COMPLAINT FOR DAMAGES

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*(subject to admission PHV):*

LAW OFFICES OF ROGER D. WIEGLEY
633 Central Road, Box 432
Rye Beach, NH 03871
Tel. 917.517.6137

By: _____
Roger D. Wiegley
rwiegley@wiegleylaw.com

COMPLAINT FOR DAMAGES

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601