1
2
3
4
5

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF WASHINGTON

6

7   AARON GRUETER; MARK
    POREMAN; ALLAN LIGI;                NO. 2:23-CV-0227-TOR
8   KENNETH CASCARELLA;
    ANDREW POKLADOWSKI;                 ORDER DENYING DEFENDANTS'
9   INWOOD CAPITAL PARTNERS             MOTION TO DISMISS
    LLC; SANDRA MCALLISTER;
10  THOMAS DOBRON; LESLIE
    SCHULTZ; MICHAEL PESICK; and
11  THOMAS BENNETT,

12                      Plaintiffs,

13        v.

14  WITHERSPOON BRAJCICH
    MCPHEE PLLC; and PETER
15  EDWIN MOYE,

16                      Defendants.

17       BEFORE THE COURT is Defendants' Motion to Dismiss (ECF No. 15).

18  The matter was submitted for consideration without oral argument.  The Court has

19  reviewed the record and files herein and is fully informed.  For the reasons

20  discussed below, Defendants' Motion to Dismiss (ECF No. 15) is **DENIED**.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 1

**BACKGROUND**

This case arises out of a failed transaction for medical equipment and the subsequent disappearance of Plaintiffs' $1 million investment. The issue before the Court is whether to grant Defendants' motion to dismiss based on Plaintiffs' alleged lack of standing and failure to join indispensable parties.

H-Source Distribution-U.S., Inc. is a Washington e-commerce medical supply distribution company. ECF No. 2 at 4, ¶ 25. In August 2021, H-Source contracted with CCG Trading, Inc., a Wyoming corporation, for the sale by CCG to H-Source of 6 million boxes of nitrile examination gloves. *Id.* at ¶ 27. In October 2021, the parties contracted to revoke the first supply agreement and to execute a second, revised supply agreement. *Id.* at 5, ¶ 31. Under the second, revised agreement, the parties agreed that they would complete a trial sale and purchase before performing their full contractual obligations. *Id.* H-Source committed to deposit $1 million into an escrow account as contract security for the trial transaction. *Id.*

Pursuant to their revised supply agreement, H-Source and CCG also signed an "Escrow Agreement." *Id.* at 6, ¶¶ 33-34. Other signatories to the Escrow Agreement were Nouam Financial Consultants Private Limited and Emerio Banque Limited. *See* ECF No. 2-1 at 2, 10. The agreement named Nouam Financial, an India corporation, as CCG's "finance partner." *Id.* at 2, ¶ B. CCG

explained that Nouam Financial would assist with its payments to the manufacturer of the gloves, while the capital from H-Source would remain in escrow. ECF No. 2-2 at 2 ("H-Source funds in escrow serve only as contract security . . . and are not encumbered or monetized in any way."). The fourth party, Emerio Banque, a United Kingdom corporation, was designated as the escrow agent. ECF No. 2-1 at 2, ¶ D.

To fulfill its obligations, H-Source identified Plaintiffs in this action as potential investors who were willing to pool their assets and fund the $1 million trial transaction. ECF No. 2 at 5, ¶ 29; 7, ¶ 40. On October 15, 2021, executives from H-Source and two of the Plaintiff-investors[1] met with Defendant Peter Moye, a partner at Defendant Witherspoon Brajcich McPhee PLLC ("WBM"), a Washington law firm representing H-Source in the transaction with CCG. *Id.* at 4, ¶ 26; 5, ¶ 30. Defendant Moye assured Plaintiffs that their investment would be safe in escrow and that there would be no deduction from the account without his

---

[1] Both the original and amended complaints identify a "David Harrison" as one of three Plaintiff-investors that Defendant Moye met with; however, David Harrison is not named as a Plaintiff in the lawsuit or otherwise identified in the file as an investor. *See* ECF Nos. 1 at 5, ¶ 30; 2 at 5, ¶ 30. The Court therefore assumes for present purposes that only two Plaintiff-investors were in attendance.

signature.  *Id.* at 5, ¶ 30; *see also* ECF No. 2-1 at 11 (authorizing Defendants to initiate and approve transactions for the escrow account); 2-2 at 2 ("[Y]our corporate counsel has signatory control for the release of funds pursuant to the agreements.")

The Escrow Agreement itself did not outline how or where H-Source should deposit the $1 million security fee.  *See* ECF Nos. 2 at 6, ¶35(a); *see also generally* 2-1.  On October 19, 2021, CCG directed H-Source to wire the money to an account named "Atari Interactive Inc." at JP Morgan Chase Bank.  ECF No. 2-2 at 3.  The bank account address was Tampa, Florida.  *Id.*  On October 26, 2021, in response to H-Source's CEO apparently expressing concern as to whether the account name "Atari Interactive" was correct, CCG assured him that it was and that the account belonged to Nouam Financial.  ECF No. 2-2 at 2.  Defendant Moye was copied on the e-mail.  *Id.*

On October 27, 2021, after receiving CCG's email assurances, Plaintiffs wired their individual contributions to the Atari Interactive account.  ECF No. 2 at 8, ¶ 45.  The same day, Emerio Banque allegedly e-mailed Nouam Financial to ask that it cooperate with Plaintiffs to cancel their wire transactions.  ECF No. 2-3 at 2-3.  Emerio Banque explained that Atari Interactive was a "NASDAQ listed company" and that therefore its SEC reporting and disclosure requirements proscribed it from accepting funds from individuals that had not entered a sales and

purchase agreement with Atari. *Id.* In reality, as Defendants belatedly uncovered, Atari Interactive is a separate entity from Nouam Financial and not a NASDAQ listed company. ECF No. 2 at 12, ¶ 71. Further, Atari reportedly claims that it knew nothing of the transactions between CCG and Nouam Financial. *Id.* at 14, ¶¶ 75-76.

CCG forwarded the e-mail from Emerio Banque to Defendant Moye and asked that the transactions from the individual investors be promptly cancelled. ECF No. 2-3 at 2. Defendants duly cancelled the pending wire transactions and represented that they would have the Plaintiff-investors send the money to H-Source and then send the funding directly from H-Source to CCG to avoid future complications. ECF No. 2-4 at 2-3. The full $1 million was returned to Plaintiffs. ECF No. 2 at 8.

In early to mid-November, CCG sent H-Source updated wire instructions. ECF No. 2 at 9. This time, CCG directed H-Source to wire the funds to the account "Atari AlphaVerse CBI" at JP Morgan Chase Bank. ECF No. 2-5 at 2. The bank address listed was a New York one. *Id.* The document was also conspicuously dated "October 19, 2021" (as the first set of wire instructions was), despite the fact that the e-mail was sent in November, after the initial wire transfer failed. *Id.* Defendants did not question these inconsistencies when reviewing the correspondence. *See* ECF No. 2 at 13, ¶ 73. Only later did Defendants discover

that the Atari AlphaVerse account was actually owned by a French corporation which was not a party to the transaction.  ECF No. 2 at 13, ¶ 74.

Per Defendant Moye's suggestion, Plaintiffs placed their money in a trust account maintained by Defendant WBM.  *Id.* at 8-9, ¶¶ 49-52.  Defendants did not inform Plaintiffs that their money would be sent to a different account this time.  ECF No. 2 at 9, ¶¶ 51-52.  On November 18 and 24, 2021, WBM sent the $1 million to the Atari AlphaVerse CBI in two separate transactions on H-Source's behalf.  ECF No. 2 at 9, ¶¶ 52-53.

The trial order went unfulfilled by CCG.  ECF No. 2 at 9, ¶ 55.  Defendants sought a return of the investment, as they were entitled to under the terms of the revised agreement.  *Id.*  Predictably, despite Defendants' undertakings to recover the money, the capital was never returned to H-Source or Plaintiffs.  *Id.*; *see also id.* at 2, ¶ 7.

Plaintiffs sued Defendants in the Eastern District of Washington, bringing claims for negligence, legal malpractice, breach of fiduciary duty, and breach of oral contract.  *See* ECF No. 2 at 10-19.  Although Plaintiffs do not believe Defendants were part of the scheme to misappropriate their investment, they maintain that Defendants overlooked a variety of "red flags" which should have prompted a due diligence investigation and alerted them to the fact that the proposed transaction was illegitimate.  *See generally id.*  Plaintiffs further aver that

they relied on Defendants' apparent transactional expertise as well as Defendant

Moye's representations that their investment would be secure in the WBM client

trust account and that money could not be withdrawn from the escrow account

without his express authorization.  *See, e.g.*, ECF No. 2 at 10, ¶ 61.  The amended

complaint seeks $1 million in damages and attorney's fees and costs, plus interest.

*Id.* at 20.

## DISCUSSION

Defendants move to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P.

12(b)(6) and 12(b)(7), alleging that (1) Plaintiffs lack Article III standing and (2)

Plaintiffs failed to join other indispensable parties (namely, H-Source, CCG,

Nouam Financial and Emerio Banque).  The Court respectfully disagrees and will

allow the action to proceed against Defendants WBM and Moye without the

abovementioned absentees.

## I.    Motion to Dismiss Standard

Defendants move to dismiss the complaint under Rules 12(b)(6) and

12(b)(7).  ECF Nos. 15 at 1, 10; 18 at 2; *see* Fed. R. Civ. P. 12(b) ("[A] party may

assert the following defenses by motion . . . (6) failure to state a claim upon which

relief can be granted; and (7) failure to join a party under Rule 19.").

As a threshold issue, the Court finds that Defendants' claim for lack of

standing should have been brought under Rule 12(b)(1) rather than Rule 12(b)(6).

*See* Fed. R. Civ. P. 12(b)(1) (allowing motions to dismiss for lack of subject-matter jurisdiction); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("Though lack of *statutory* standing requires dismissal for failure to state a claim, lack of *Article III* standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).") (emphasis in original); *see also, e.g.*, *G.G. by and through A.G. v. Meneses*, 638 F. Supp. 3d 1231, 1239 (W.D. Wash. 2022) (reviewing motion to dismiss for lack of standing under Rule 12(b)(1) and motion to dismiss for alleged violations of the Fourteenth Amendment, ADA, and WLAD separately under Rule 12(b)(6)). The Court will therefore review the requirements of Rules 12(b)(1) and 12(b)(7) before turning to the parties' standing and joinder contentions.

### A.    Rule 12(b)(1)

A jurisdictional challenge brought under Rule 12(b)(1) may present as either a facial or factual attack. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true

1    and drawing all reasonable inferences in the plaintiff's favor, the court determines

2    whether the allegations are sufficient as a legal matter to invoke the court's

3    jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation

4    omitted).  By contrast, in resolving a factual challenge to the court's jurisdiction,

5    the court may review evidence beyond the complaint.  *Safe Air for Everyone*, 373

6    F.3d at 1039; *see also Savage v. Glendale Union High Sch., Dist. No. 205,*

7    *Maricopa Cnty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (noting a motion to

8    dismiss may be converted into a factual attack under 12(b)(1) by presenting

9    affidavits or other evidence).

10         The challenge to Plaintiffs' standing is better characterized as a facial attack

11    than a factual one, because Defendants' motion assumes the truth of Plaintiffs'

12    factual allegations.  *See* ECF No. 15 at 5-8.  Even if Defendants were to contest

13    this, however, the Court would still be required to defer to the Plaintiffs' factual

14    allegations, because the motion to dismiss is premised on a lack of standing.

15    *Young v. Crofts*, 64 F. App'x 24, 25 (9th Cir. 2003) (unreported) ("[T]he Supreme

16    Court has held that where a 12(b) motion to dismiss is based on a lack of standing,

17    the reviewing court must defer to the plaintiff's factual allegations, and must

18    presume that general allegations embrace those specific facts that are necessary to

19    support the claim.'") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561

20    (1992)); *see also, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 158 (1997).

"[A] 12(b)(1) motion to dismiss for lack of standing can only succeed if the plaintiff has failed to make 'general factual allegations of injury resulting from the defendant's conduct.'"  *Young*, 64 F. App'x at 25 (quoting *Lujan*, 504 U.S. at 561).  Further, "in determining constitutional standing, 'it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing.'"  *Maya*, 658 F.3d at 1067 (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  The burden of proof rests with the party invoking federal jurisdiction, and the party must support the elements of standing "with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan*, 504 U.S. at 561.  Therefore, in evaluating whether Plaintiffs have Article III standing at this early pleading stage, the Court will presume the truth of the factual allegations of the complaint.

**B.    Rule 12(b)(7)**

The Court will review Defendants' joinder arguments under Rule 12(b)(7). While the party asserting jurisdiction bears the burden of proof under Rule 12(b)(1), the burden of proof falls to the moving party in a Rule 12(b)(7) analysis. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).  As with a 12(b)(1) or (b)(6) analysis, the Court will accept the factual allegations of the plaintiff's complaint as true and draw all reasonable inferences in the plaintiff's

favor. *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affs.*, 932 F.3d 843, 851 (9th Cir. 2019).

## II. Article III Standing

Defendants assert that Plaintiffs have not met the requirements of Article III standing because their alleged injury is not traceable to Defendants' conduct and their injury is not redressable. ECF No. 15 at 6-8. The Court finds that Plaintiffs have standing to pursue this cause of action.

### A. Elements of Standing

Standing is a jurisdictional requirement that grows out of the separation of powers principles implicit in the Constitution. *See* U.S. CONST. art. III, § 2 (limiting the federal judicial power to "Cases" or "Controversies"); *see also I.N.S. v. Chadha*, 462 U.S. 919, 946 (1983) ("'[S]eparation of powers was not simply an abstract generalization in the minds of the Framers: it was woven into the documents that they drafted in Philadelphia in the summer of 1787.'") (quoting *Buckley v. Valeo*, 424 U.S. 1, 124 (1976)). Lack of Article III standing requires dismissal for want of subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

To satisfy this "irreducible constitutional minimum," the party invoking federal jurisdiction—in this case, the Plaintiffs—must meet three elements. *Lujan*,

504 U.S. at 560; *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-4 (1998) ("This triad . . . constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.").  First, Plaintiffs must establish an "'injury-in-fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citations removed).  An injury is particularized when it "affect[s] the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1).  For an injury to be "concrete," it "must be '*de facto*'; that is, it must exist." *Id.* at 340; *see also, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 n.7 (1983) (Plaintiff lacked standing to obtain an injunction against the enforcement of a police chokehold policy because he could not "credibly allege that he faced a realistic threat from the future application of the City's policy.").  As abovementioned, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.

"Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co.*, 523 U.S. at 103 (1998) (citing *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)).  Although an injury is not fairly traceable if it "is the result of the

independent action of some third party not before the court, that does not exclude injury produced by the determinative or coercive effect upon the action of someone else." *Bennett*, 520 U.S. at 169 (cleaned up) (internal quotations and citations omitted). In other words, while a plaintiff may not "rely on a bare legal conclusion" or "engage in an ingenious academic exercise . . . to explain how defendants' actions caused his injury," *Maya*, 658 at 1060 (internal quotations and citations omitted), "[a] causation chain does not fail simply because it has several 'links,' provided those links are not hypothetical or tenuous and remain plausible," *id.* at 1070 (internal quotations and citations omitted). Again, at the pleadings stage, the Plaintiffs' burden to establish causation is "relatively modest." *Bennett*, 520 U.S. at 171.

Finally, the Plaintiffs must establish that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38). "[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." *Uzuegbunam v. Preczewski*, 529 U.S. ---, 141 S.Ct. 792, 801 (2021) (finding plea for nominal damages sufficient to satisfy the redressability requirement for past injury).

### B. Plaintiffs Have Established Standing

As Defendants concede, Plaintiffs have established an injury-in-fact. *See* ECF No. 15 at 6. Under the contract, each named Plaintiff was entitled to a refund

of their escrowed investments.  The holder of the Atari AlphaVerse CBI bank

account did not return the money to Plaintiffs when the transaction between H-

Source and CCG failed.  No defendant could reasonably argue that this loss was

merely hypothetical or speculative.  *Compare Lyons*, 461 U.S. at 106.  To the

contrary, the fraud affected each Plaintiff in an individual, concrete, and actual

way.  *Lujan*, 504 U.S. at 560.  Further, from a pragmatic standpoint, the injury was

substantial: nine of the eleven Plaintiffs lost $100,000 or more.  ECF No. 2 at 7, ¶

40.  The remaining Plaintiffs lost $50,000 and $25,000, respectively.  *Id.*

The bulk of Defendants' contentions relate to the causation element.

Defendants submit that they "bear no legal relationship to [Plaintiffs] or the alleged

harm they suffered" and that they were mere "facilitators" of Nouam Financial and

Emerio Banque's deposit instructions.  ECF No. 15 at 6.  As Defendants see it,

Plaintiff's injuries are the consequence of their interactions with H-Source, CCG,

Nouam Financial, and/or Emerio Banque.  *Id.* at 6-8.

The causation element is not as attenuated as Defendants claim.  Under the

facts of the amended complaint, which the Court accepts as true at this stage,

Defendants offered to hold Plaintiffs' funds on their behalf in trust after the first

transaction failed.  ECF No. 2 at 2, ¶ 5; 8-9, ¶¶ 49-52.  Defendants accepted

responsibility for the funds and assured Plaintiffs that the money placed in escrow

could not be withdrawn or otherwise misused by bad actors without their express

1   authorization.  *Id.* at 5, ¶ 30; 7, ¶ 39.  Plaintiffs relied on these assurances and

2   Defendants' legal and transactional expertise in deciding to invest in H-Source and

3   allowing WBM to hold the money for purposes of the second wire.  *Id.* at 5, ¶ 30;

4   10, ¶ 61.  When Defendants received the second set of wire instructions, they did

5   not inform Plaintiffs that the money was to be sent to a different account than the

6   one in the original transaction, investigate who the accountholder was, question

7   why the letter was backdated, or take further precautions against the loss of

8   Plaintiffs' investment.  *Id.* at 7-8, ¶ 43; 11, ¶ 65.

9       At this stage, these pleadings are sufficient to establish that Plaintiffs' injury

10  plausibly would not have occurred but for the acts and omissions of Defendants.

11  *See Bennett*, 520 U.S. at 169 (an injury produced by the determinative or coercive

12  effect upon the action of someone else meets the requirement of causation).  It is

13  entirely plausible that, at a later point, Defendants may be able to rebut this

14  presumption by showing that Plaintiffs were not induced by their representations or

15  acts to entrust the money to Defendant WBM.  For the time being, however,

16  Plaintiffs have appropriately alleged that their injury is fairly traceable to

17  Defendants' allegedly tortious conduct.  Nothing further is required.

18      Finally, Plaintiffs have met their burden as to redressability.  Plaintiffs seek

19  $1 million plus attorney's fees and costs.  ECF No. 2 at 20.  Imposition of that sum

20  of damages by the Court would restore Plaintiffs to same position they were in

prior to entrusting Defendants with their investment.  Accordingly, the Court finds

Plaintiffs have met their burden to establish standing.

## III.    Compulsory Joinder

Defendants argue that Plaintiffs failed to join multiple indispensable parties,

including H-Source, CCG, Nouam Financial, and Emerio Banque.  ECF No. 15 at

9-10.  The Court disagrees.

### A.    Compulsory Joinder Principles

Under Rule 19, courts undertake a three-step analysis for determining

whether the action should be dismissed for failure to join an indispensable party.

*Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir.

2012).  First, the Court will decide whether the absentee is a "necessary" party

under Rule 19(a).  *Id.*  Second, the Court will determine whether joinder is

feasible.  *Id.*  If the absentee is necessary but joinder is infeasible, the Court must

proceed to the third step and determine whether the absentee is "indispensable"

under Rule 19(b), meaning "whether in 'equity and good conscience' the action

can continue without the party."  *United States v. Bowen*, 172 F.3d 682, 688 (9th

Cir. 1999) (quoting Fed. R. Civ. P. 19(b)).

Per Rule 19(a), joinder is necessary if:

(A) in that person's absence, the court cannot accord complete relief
among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or
(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). If a party is necessary, courts must then ask whether joinder "feasible," meaning the necessary party is "subject to service of process" and joinder will "not deprive the court of subject-matter jurisdiction." *Id.*

When a party is necessary yet joinder appears infeasible, then Rule 19(b) is triggered. The factors the Court considers under Rule 19(b) are:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
(2) the extent to which any prejudice could be lessened or avoided by:
(A) protective provisions in the judgment;
(B) shaping the relief; or
(C) other measures;
(3) whether a judgment rendered in the person's absence would be adequate; and
(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

### B.    The Absentees Are Not "Necessary" Parties

The Court begins by examining whether "complete relief" could be accorded among the existing parties. *See* Fed. R. Civ. P. 19(a)(1)(A) . "Complete relief 'is

concerned with consummate rather than partial or hollow relief as to those already

parties, and with precluding multiple lawsuits on the same cause of action.'" *Alto*

*v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013) (quoting *Disabled Rts. Action*

*Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004)).  Relief must

be "meaningful" ""*as between the parties*.'"  *Id.* (emphasis in original).  Because

the inquiry is limited to whether complete and meaningful relief can be accorded

between already-present parties, courts in the Ninth Circuit have found an absentee

is not necessary or indispensable simply because of their status as a joint tortfeasor.

*See, e.g.*, *Anchorage v. Integrated Concepts & Rsch. Corp.*, 1 F. Supp. 3d 1001,

1014-15 (D. Alaska 2014) (finding a defendant's potential right to seek

contribution or indemnity from the government did not make the government a

necessary party); *see also, e.g.*, *Monster Film Ltd. v. Martinen*, 2:16-cv-01414-

ODW, 2017 WL 8220213 at *2 (C.D. Cal. Mar. 3, 2017) (unreported) ("Although

a less convenient remedy, the joint tortfeasor may bring a separate action against

any other joint tortfeasors.").

Defendants assert that H-Source, CCG, Nouam Financial, and Emerio

Banque are necessary parties because the broken Escrow and Investors

Agreements are the true source of Plaintiffs' claims, and Defendants were not

parties to those contracts.  ECF No. 15 at 9-10.  Defendants maintain that "a party

to a contract is necessary, and if not susceptible to joinder, indispensable to

1   litigation seeking to decimate that contract." *Id.* at 8 (quoting *Dawavendewa v.*

2   *Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002)).

3        Complete relief can be accorded in this case between Plaintiffs and

4   Defendants without the presence of the four abovementioned absentees.

5   Defendants have not bothered to explain how the return of the money which

6   Plaintiffs entrusted to Defendants would not accord "complete" or "meaningful"

7   relief that would preclude future lawsuits against Defendants for the same claims.

8   *See Makah Indian Tribe*, 910 F.2d at 558 (the movant bears the burden of proof in

9   a Rule 12(b)(7) analysis).  Neither is Plaintiff seeking some future injunctive relief

10  that cannot be accorded in H-Source's, CCG's, Nouam Financial's, or Emerio

11  Banque's absence.  The crux of Defendants' motion seems to be that they cannot

12  fairly be held responsible for having the wool pulled over their eyes by

13  CCG/Nouam Financial/Emerio Banque/some unknown third party regarding the

14  security of the escrow account.  However, those arguments go more to the issues of

15  contribution or indemnity, which are not relevant to whether Plaintiffs could

16  receive complete relief from Defendants.

17        Defendants' discussion of the Escrow Agreement and Investors Agreement

18  is likewise misplaced.  As an initial matter, the Plaintiff-investors were not even

19  parties to the Escrow Agreement—it was between H-Source, CCG, Nouam

20  Financial, and Emerio Banque.  *See* ECF No. 2-1 at 2.  Plaintiffs' only awareness

of that agreement came from Defendants and H-Source, who explained the proposed escrow and supply arrangements in bidding for Plaintiffs' investment. ECF No. 2 at 5.

As to the Investors Agreement, the only signatories to that were Plaintiffs and H-Source. ECF No. 2 at 7. However, the fact that H-Source was a party to a broken contract does not automatically convert H-Source into a necessary party in this action. A party to a contract is only necessary where the party opposing joinder effectively seeks to set aside the contract between the absentee and the defendant. *See, e.g.*, *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1326-27 (9th Cir. 1975) (Hopi Tribe was a necessary party to a suit by an individual challenging a lease between the Hopi Tribe and a coal company); *Dawavendewa*, 276 F.3d at 1153-55 (holding the Navajo Nation was a necessary party in a case where the plaintiff challenged an employment contract between the defendant power company and Navajo Nation requiring the defendant to give preferential hiring treatment to members of the Navajo Nation).

Plaintiffs are not suing Defendants to set aside a contract. The escrow and investors arrangements were broken before Plaintiffs filed suit. More fundamentally, while the contractual relationship between Plaintiffs and the absentees contextualizes Plaintiffs' claims against Defendants, Plaintiffs are not suing Defendants for breach of those agreements. Plaintiffs are suing Defendants

for negligence in handling their investment, legal malpractice, breach of fiduciary duty, and breach of oral contract.[2]  ECF No. 2 at 10-19.  Therefore, the broken contracts do not subvert the conclusion that complete relief could be accorded between the present parties.

An absentee may also be a necessary party where it "claims an interest relating to the subject of the action" and disposing of the action in the party's absence would either (i) impair or impede the absentee's ability to protect the interest or (ii) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B).  Defendants did not analyze whether any of the absentees are necessary under this prong.  *See* ECF Nos. 15 at 9-10; 18 at 3 (discussing only the "complete relief" element).  Additionally, to resolve this inquiry, the Court would need to know whether the absent parties are aware of this litigation as well as the absentees' potential interests in the resolution of this matter.  *See Bowen*, 172 F.3d at 689 (finding the district court appropriately held joinder was unnecessary where an absentee who was aware of the proceedings

---

[2] Plaintiffs assert Defendant Moye breached an oral promise that any money placed in escrow by himself or Defendant WBM would be secure and could not be moved without his signature.

elected not to intervene); *see also Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 331 F.R.D. 427, 432 (W.D. Wash. 2019) (the party's interest must be either "legally cognizable" or "legally protected," meaning it is "more than a financial stake and more than speculation about a future event") (internal quotations and citations omitted).

The Court declines to engage in speculation or to produce arguments on Defendants' behalf. The Court therefore concludes the absentees are not "necessary" parties and declines to proceed to steps two and three of the Rule 19 analysis.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss (ECF No. 15) is **DENIED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel. The file remains **OPEN**.

DATED January 22, 2024.



THOMAS O. RICE
United States District Judge