UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AARON GRUETER; MARK POREMAN; ALLAN LIGI; KENNETH CASCARELLA; ANDREW POKLADOWSKI; INWOOD CAPITAL PARTNERS LLC; SANDRA MCALLISTER; THOMAS DOBRON; LESLIE SCHULTZ; MICHAEL PESICK; and THOMAS BENNETT,<br><br>                  Plaintiffs,<br><br>  v.<br><br>WITHERSPOON BRAJCICH MCPHEE PLLC; and PETER EDWIN MOYE,<br><br>                  Defendants. | NO. 2:23-CV-0227-TOR<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Plaintiffs' Motion for Summary Judgment on the Third Cause of Action. ECF No. 56. This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein and is

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 1

fully informed.  For the reasons discussed below, Plaintiff's motion for summary judgment is **DENIED**.

## BACKGROUND

This case arises out of a failed transaction for medical equipment.  The issue before the Court is whether to grant Plaintiffs' motion for summary judgment as to the breach of fiduciary duty claim.  ECF No. 56.

CCG is a medical supply company that imports equipment from Malaysia and China into California and various East Coast ports.  ECF Nos. 42 at 4, ¶¶ 3-9; 24 at 11, ¶ 3.  CCG is incorporated in Wyoming and maintains offices in California and Malaysia.  ECF No. 42 at 4, ¶¶ 4-5.

H-Source Distribution-U.S., Inc. was a Washington e-commerce medical distribution company that was administratively dissolved in February 2023 after filing for Chapter 7 bankruptcy.  ECF Nos. 2 at 4, ¶ 25; 50-1 at 2.  In early 2021, H-Source became acquainted with CCG through Robert Sudon, a Californian and independent broker.  ECF No. 42 at 5, ¶ 13.  H-Source represented that it was interested in obtaining personal protection equipment (PPE) from CCG.  ECF No. 49 at 2, ¶ 6.  On August 13, 2021, after several rounds of virtual meetings, phone calls, and e-mail negotiations, H-Source and CCG executed a formal supply agreement, under which H-Source agreed to purchase 6 million boxes of Malaysian-manufactured nitrile examination gloves from CCG, to be shipped in

installments of 500,000 boxes per month over the course of 12 months.  ECF Nos. 42 at 5, ¶ 13; 48 at 2, ¶ 5; *see* ECF No. 42-1 at 4.  The agreement provided that the gloves would be shipped "delivery duty paid" to Los Angeles, California, where H-Source would retrieve it from a warehouse.  ECF No. 41 at 4.  H-Source was represented by attorney Peter Moye of Witherspoon Brajcich McPhee PLLC ("WBM") throughout these dealings.  *See generally* ECF Nos. 2; 24.  WBM is a Spokane law firm.  *Id.*

In October 2021, the parties signed an addendum agreement which revoked their first supply agreement and created a second supply agreement and escrow agreement.  ECF No. 47 at 3; *see also* ECF No. 49-3.  The second sale agreement was substantially the same as the first but required the parties to complete a trial order and sale as a condition precedent to the fulfillment of the parties' full agreement for the sale of 6 million boxes of gloves.  ECF Nos. 1 at 5, ¶ 31; 47 at 3.  Specifically, H-Source agreed that it would deposit money into an escrow account in exchange for a trial shipment of 250,000 boxes of gloves.  ECF No. 49-3 at 3.  The parties agreed that if H-Source rejected the trial order, the second supply agreement would be canceled and the money in escrow would be returned.  ECF No. 47 at 5.  Both agreements provided they were to be "governed by and construed in accordance with the laws of Wyoming."  ECF No. 49-2 at 7; *see also* ECF No. 49-3 at 4.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 3

The agreement required H-Source to maintain an escrow account with an international trading bank. ECF Nos. 42 at 5, ¶ 15; 42-1 at 8. The parties identified Emerio Banque Ltd., a United Kingdom financial institution, as the escrow agent and Nouam Financial Consultants PVT Ltd., an India corporation, as the financier. ECF No. 49-1 at 2. As explained by CCG's head Commercial officer, the purpose of identifying a financier and opening an escrow account was so that CCG could pay manufacturing and logistics costs up front "without encumbering H-Source funds." ECF No. 2-2 at 2 (italics deleted). CCG introduced Nouam Financial to H-Source as a potential financier but did not require H-Source to use Nouam or any other specific institution for its financing. ECF No. 51 at 4, ¶ 6. H-Source's corporate counsel, Mr. Moye, had signatory control for the release of any escrow funds. ECF No. 2-2 at 2.

Nouam required H-Source to place 1 million U.S. dollars in escrow as contract security for the trial transaction. ECF No. 48 at 2, ¶ 7. With the assistance of its legal counsel, H-Source identified various individual investors who were willing to fund the venture. ECF No. 2 at 5, ¶ 29. Those investors executed a separate Investors Agreement on October 21, 2021. ECF No. 2 at 7, ¶¶ 41-42.

The escrow agreement did not outline how or where H-Source should deposit the funds. ECF No. 2 at 6, ¶ 35(a). On October 19, 2021, CCG directly

instructed H-Source to wire the money to a Florida bank account named "Atari Interactive Inc." ECF No. 2-2 at 3. When H-Source responded with confusion over whether the wire instructions were correct, CCG assured H-Source that they were and explained, "Nouam has over USD160M on deposit at Chase and Emerio banks, and the deposit to this account is their requirement to provide CCG Trading our financing." ECF No. 2-2 at 2.

Following this correspondence, the H-Source investors individually wired their money to the Atari Interactive account. ECF No. 2 at 8, ¶ 45. The same day, Kenneth Jackson, the head of Compliance at Emerio Banque, e-mailed officers at Nouam and stated that Atari could not accept wires from individual persons who were not signatories to the escrow agreement between Nouam, H-Source, and CCG. ECF No. 2-3 at 2-3. Emerio Banque requested that all individuals cancel their wires and that H-Source resend the money. *Id.* at 3. On October 27, 2021, CCG forwarded the e-mail from Emerio Banque to Mr. Moye and advised that "[t]ime [was] of the essence" in fixing the error. *Id.* at 2. The following day, Mr. Moye wrote to Emerio Banque and represented that the investors were in the process of canceling the pending transfers and that "[o]nce the funds are returned, I will resend funds from H-Source directly." ECF No. 2-4 at 3.

Following the cancellation of the initial wire transfers, H-Source, together with Mr. Moye, decided to utilize WBM's Interest on Lawyers' Trust Accounts

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 5

(IOLTA) at Washington Trust Bank in Spokane, Washington, to hold the wire funds from individual investors so the money could be remitted directly from H-Source to the escrow account. ECF No. 2 at 8-9, ¶ 49. In November, Nouam directed CCG to send the funds from H-Source to a New York bank account named "Atari AlphaVerse CBI." ECF No. 42 at 5, ¶ 16. CCG forwarded the instructions to H-Source, and Mr. Moye duly wired the money from the IOLTA account. ECF No. 2-5 at 2.

The trial transaction failed, apparently due to the glove manufacturer rejecting a faulty check by Nouam. ECF Nos. 47 at 5-6; *see also* 2-6 at 3. To date, the individual investors—who are Plaintiffs in this action—have been unable to recover their monies. A letter from Mr. Moye to Emerio Banque and Nouam's legal counsel provides some further context behind why the transaction was unsuccessful:

> After executing the Escrow Agreement, [H-Source's] investors began depositing the $1,000,000 into the authentic Atari account. In my conversations with the Atari general counsel, he informed me in no uncertain terms that Atari knew nothing about the transactions between CCG and Nouam and that upon noticing the wire transfers into the Atari account, it prompted them to contact Chase Bank and (1) begin a fraud investigation, and (2) reverse all the wire transfers.
>
> It was at this time that your client directed that all the deposits were to come through my office and be deposited in the fraudulent Atari account, owned by Crypto Blockchain Industries [CBI]. I have attached a copy of the text messages from your client to CCG indicating that they had spoken directly with the Atari executives and that this was the correct account. Those texts are patently false in their

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 6

> representations. As I previously indicated, Mr. Chesnais was fired from Atari in April 2021, and this account was not set up or initiated until after June of 2021.
>
> The transaction failed due to issues surrounding your client's financing of the transaction. Your client did provide what purports to be a cashier's check . . . made payable to [the glove manufacturer]. The check was post-dated to June of 2022 and was worthless as it related to a transaction that was supposed to have been completed in December of 2021[.] . . . You are correct that CCG is holding that check . . . CCG informs me they would be more than happy to return that check on the condition that the $1,000,000 presently held in escrow at Chase Bank be returned to my escrow account.
>
> . . .
>
> Your representation of both Nouam and Emerio Banque further confirms that there is some form of collusion, conspiracy and/or collaboration between Nouam, Emerio Banque and potentially [CBI]. My client has hired counsel in Wyoming . . . and counsel in the United Kingdom in order to protect my client's legal rights and collect the money that is due and owing to them.

ECF No. 2-6 at 3 (dated April 26, 2022).

On August 11, 2023, the individual investors brought claims against Mr. Moye and WBM for (1) negligence, (2) legal malpractice, (3) breach of fiduciary duty, and (4) breach of oral contract. ECF Nos. 1; 2 at 10-19. The Court denied Mr. Moye and WBM's motion to dismiss. ECF No. 21. Now before the Court is Plaintiffs' motion for summary judgment as to the third cause of action for breach of fiduciary duty. ECF No. 56.

//

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 7

# DISCUSSION

## I. Undisputed Facts

Plaintiffs included a separate Statement of Material Facts Not in Dispute with their motion for summary judgment. ECF No. 56-1. Local Civil Rule 56(c)(B) requires a party opposing a motion for summary judgment to file a Statement of Disputed Material Facts "cit[ing] to the specific page or paragraph of the record where the disputed fact is found." LCivR 56(c)(B). "The Court may consider a fact undisputed and admitted unless controverted by the procedures set forth in LCivR 56(c)." LCivR 56(e).

Defendants' response did not include any separate or attached statement disputing any of Plaintiffs' undisputed material facts. However, within their response, Defendants dispute three of Plaintiffs' assertions using a defense expert. ECF No. 59 at 12. First, Defendants' dispute Plaintiffs' assertion that a provision in the escrow agreement providing for no compensation to Mr. Moye as the escrow agent "is unusual" (ECF No. 56-1 at 8, ¶ 35). ECF No. 59 at 11. Next, Defendants dispute Plaintiffs' assertion that the provision in the escrow agreement absolving the escrow agent from being a fiduciary is unusual (ECF No. 56-1 at 8, ¶ 34). ECF No. 59 at 12. Finally, Defendants dispute Plaintiffs' assertion that the escrow agreement did not grant CCG authority to establish the escrow account (ECF No. 56-1 at 9). ECF No. 59 at 12. Even though Defendants did not comply with the

1 Local Rules on disputing Plaintiffs' statement of undisputed facts, the Court will
2 deem those three assertions as disputed but deem Plaintiffs' remaining listed facts
3 as undisputed and admitted. *See, e.g.*, *Espinda v. Cardoza*, 2024 WL 2963439, at
4 *1, *1 n.2 (E.D. Wash. 2024) ("Plaintiff did not comply with Local Rule 56, which
5 requires the party opposing the motion for summary judgment to "separately file" a
6 Statement of Disputed Material Facts . . . . Defendant's statement of facts is
7 deemed undisputed and admitted.").

8  **II.  Summary Judgment Standard**

9  The Court may grant summary judgment in favor of a moving party who
10 demonstrates "that there is no genuine dispute as to any material fact and that the
11 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In
12 ruling on a motion for summary judgment, the court must only consider
13 admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir.
14 2002). The party moving for summary judgment bears the initial burden of
15 showing the absence of any genuine issues of material fact. *Celotex Corp. v.*
16 *Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving
17 party to identify specific facts showing there is a genuine issue of material fact.
18 *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere
19 existence of a scintilla of evidence in support of the plaintiff's position will be
20

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 9

1   insufficient; there must be evidence on which the jury could reasonably find for
2   the plaintiff." *Id*. at 252.
3         For purposes of summary judgment, a fact is "material" if it might affect the
4   outcome of the suit under the governing law. *Id*. at 248. Further, a dispute is
5   "genuine" only where the evidence is such that a reasonable jury could find in
6   favor of the non-moving party. *Id*. The Court views the facts, and all rational
7   inferences therefrom, in the light most favorable to the non-moving party. *Scott v.*
8   *Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted
9   "against a party who fails to make a showing sufficient to establish the existence
10  of an element essential to that party's case, and on which that party will bear the
11  burden of proof at trial." *Celotex*, 477 U.S. at 322.

12  **III.  Breach of Fiduciary Duty Elements**

13        To succeed on a breach of fiduciary duty claim, Plaintiffs "must establish (1)
14  the existence of a duty owed [to them], (2) a breach of that duty, (3) a resulting
15  injury, and (4) that the claimed breach was the proximate cause of the injury."
16  *Hansen v. Friend*, 118 Wash. 2d 476, 479 (1992). "Whether a legal duty exists is a
17  question of law. Where the facts are not in dispute . . . once it is determined that a
18  duty is owed to the plaintiff, the court then determines whether the facts qualify as
19  that defined duty, and whether there was a breach." *Miller v. U.S. Bank of*
20  *Washington, N.A.*, 72 Wash. App. 416, 426 (1994), as corrected (Feb. 22, 1994).

### a. Existence of fiduciary duty

Plaintiffs argue that Defendants owed fiduciary duties to Plaintiffs while Plaintiffs' funds were kept in an escrow account managed by Mr. Moye in his capacity as a partner of WBM. ECF No. 56 at 12.

Whether an individual, or entity, owes a fiduciary duty is a question of law. *Lodis v. Corbis Holdings, Inc.*, 172 Wash. App. 835, 857 (2013). The Washington Supreme Court examined the duties of an escrow agent in *National Bank of Washington v. Equity Investors*, 81 Wash. 2d 886 (1973). "Whether he be designated escrow agent or escrow holder, or both, makes little difference in law; the important thing as that as an agent, holder, or trustee for the parties (citation omitted), he occupies a fiduciary relationship to all parties to the escrow." *Equity Investors*, 81 Wash. App. at 910. "The escrow agent's duties and limitations are defined, however, by his instructions." *Id*. The court adopted the stated rule from 30A C.J.S. Escrows s 8 (1965):

> The duties of a depositary or escrow holder are those set out in the escrow agreement. . . . As a general rule, the escrow holder must act strictly in accordance with the provisions of the escrow agreement; he must comply strictly with the instructions of the parties, and it is his duty to exercise ordinary skill and diligence, and due or reasonable care in his employment in his fiduciary capacity, he must conduct the affairs with which he is entrusted with scrupulous honesty, skill, and diligence.

*Id*. "Thus, it is the rule that an escrow agent or holder becomes liable to his principles for damage proximately resulting from his breach of the instructions, or

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 11

from his exceeding the authority conferred on him by the instructions." *Id.* In this case, Mr. Moye was an attorney escrow agent. "In addition to the duty to follow the escrow instructions, a duty which applies to all escrow agents whether attorneys or lay persons, an attorney escrow agent must also meet the standards of the legal profession, including those standards set forth in the Code of Professional Responsibility." *Bowers v. Transamerica Title Ins. Co.*, 100 Wash. 2d 581, 588 (1983). This applies even where no attorney-client relationship exists. *See Stiley v. Block*, 130 Wash. 2d 486, 500-02 (1996).

Thus, Defendants had a fiduciary duty to follow escrow instructions and to act in accordance with the Washington Rules of Professional Conduct ("RPC"). *Id.* at 500.

    **b. Breach of fiduciary duty**

Whether Defendants breached their fiduciary duty to Plaintiffs is a question of law. *See Hurlbert v. Gordon*, 64 Wash. App. 386, 393 (examining issue of breach of fiduciary duty as a question of law where underlying material facts not disputed); *Eriks v. Denver*, 118 Wash. 2d 451, 457-58 (1992) ("[W]e hold that the question of whether an attorney's conduct violates the relevant rules of professional conduct is a question of law.").

As to Defendants' duty as an escrow agent, Plaintiffs concede that no escrow instructions were provided to Defendants by Plaintiffs during the time Defendants

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 12

held Plaintiffs' funds in escrow "other than an implied request to send their funds to a legitimate escrow account." ECF No. 63 at 11. Rather, Plaintiffs argue that "[i]t is the duty to 'exercise ordinary skill and diligence' owed to the Plaintiffs that is relevant to the Motion, not the Defendants duty to their client to follow instructions received from their client." *Id*. On the contrary, Washington case law has repeatedly centered examination of an escrow agent's breach of fiduciary duty on an escrow agent's instructions. *Equity Investors*, 81 Wash. App. at 910 ("The escrow agent's duties and limitations are defined . . . by his instructions."); *Denaxas v. Sandstone Court of Bellevue, L.L.C.*, 148 Wash. 2d 654, 663 (same); *Delson Lumber Co. v. Washington Escrow Co.*, 16 Wash. App. 546, 550 (1976). An escrow agent's duty of ordinary skill and diligence pertains to carrying out those instructions. *Denaxas*, 148 Wash. 2d 654, 663 ("The tasks in the instructions must be undertaken with 'ordinary skill and diligence, and due or reasonable care.'" (quoting *Equity Investors*, 81 Wash. 2d at 910)).

Mr. Moye was charged with transferring Plaintiffs' funds held in escrow (ECF Nos. 63 at 11; 59 at 13) with no additional instruction to also investigate the legitimacy of the recipient of the transfer. Washington law does not require that an escrow agent investigate for evidence of fraud, only a "duty to inform the parties to the transaction if it has reasonable cause to believe a party has perpetrated a fraud against another party to the transaction." *Butko v. Steward Title Co. of*

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 13

*Washington, Inc.*, 99 Wash. App. 533, 551-52 (2000).  Therefore, Plaintiffs' contention that Mr. Moye's failing to further investigate evidence of fraud was a breach of his fiduciary duty as an escrow agent fails.  Plaintiffs could argue that Defendants had reasonable cause to believe a fraud was occurring due to the allegedly obvious red flags, and therefore, had a duty to inform Plaintiffs before the transaction occurred.  However, that is not the argument presented here, and the Court will not consider it at this time.

The question of whether Mr. Moye's failure to investigate was a breach of his fiduciary duty as an attorney still remains and is Plaintiffs' main argument.  Plaintiffs do not cite to any rules of professional conduct they claim Defendants violated but instead contend Defendants breach of fiduciary duty is plainly obvious because any reasonable attorney "would have exercised much greater diligence before sending the Plaintiffs' money to a bank account with such dubious legitimacy." ECF No. 56 at 18.  "The Rules of Professional Conduct (RPC) generally outline an attorney's fiduciary duties.  (citation omitted)  Whether a fiduciary duty exists under the RPC[] and whether an attorney has breached a fiduciary duty are questions of law." *Arden v. Forsberg & Umlauf, P.S.*, 193 Wash. App. 731, 743 (2016); *see also* WPI 107.10 Breach of Fiduciary Duty—Burden of Proof, 6 Wash. Prac., Wash. Pattern Jury Instr. Civ. WPI 107.10 cmt. (7th ed.) ("The Rules of Professional Conduct (RPC) may be used as the basis for

1  finding that an attorney breached a fiduciary duty. (citation omitted). This is in
2  contrast to negligence-based malpractice actions, for which the RPCs do not
3  conclusively establish the standard of care.").

4  Plaintiffs' assertions that any reasonable attorney would have exercised
5  greater diligence, and that the breach of fiduciary duty is so obvious that it can be
6  decided as a matter of law, are not a basis for a breach of fiduciary duty claim
7  without some reference to how such conduct is in violation of the RPC. In fact,
8  Plaintiffs' case citation in support of their latter contention is actually a negligence
9  case. *See Hansen v. Wightman*, 14 Wash. App. 78 (1975) ("[I]f it cannot be said
10 that the duty to inquire or disclose was present as a matter of law, then it is for the
11 trier of the fact to decide . . . whether negligence existed on the part of the lawyer
12 for his failure to inquire about certain matters . . . .").

13 Because Plaintiffs do not identify any breached Washington RPC or provide
14 support that the reasonable prudent attorney standard applies to a breach of
15 fiduciary claim in the state of Washington, Plaintiffs' request for summary
16 judgment on this claim fails.

17 //
18 //
19 //
20 //

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 15

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Plaintiffs' Motion for Summary Judgment on Third Cause of Action, (ECF No. 56, is **DENIED**.

The District Court Executive is directed to enter this Order, furnish copies to counsel.

DATED **October 4, 2024**.



THOMAS O. RICE
United States District Judge